COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2303**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV115

IN COURT OF APPEALS
DISTRICT IV

LMI PROPERTIES, LLC,

    PLAINTIFF-APPELLANT,

  V.

CITY OF SPARTA ZONING BOARD OF APPEALS,
WALLACE HABHEGGER, LANCE HAUSER, MARY KNOLL,
ANGIE MITCHELL, BRIAN HARRIE, AND CARLOS HOLCOMB,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Monroe County: RICHARD A. RADCLIFFE, Judge. *Affirmed and cause remanded with directions.*

Before Kloppenburg, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   LMI Properties, LLC (LMI), appeals a circuit court judgment dismissing its certiorari action against the City of Sparta Zoning Board of Appeals (the Board of Appeals or the Board).  LMI's appeal centers on the status of a conditional use permit (CUP) approved by the City of Sparta planning commission in 2018 (the 2018 CUP).  LMI argues that the Board of Appeals had jurisdiction to hear LMI's appeal of the City of Sparta zoning administrator's determination that the 2018 CUP had expired.  LMI further argues that it is entitled to certiorari relief because the Board denied its appeal without stating its reasons and because the Board's denial of LMI's appeal was arbitrary, oppressive, or unreasonable, and represented its will and not its judgment.

¶2      The circuit court described this case as presenting "one of the most confusing factual scenarios you will ever see."   We agree with this characterization, and further add that the parties' appellate briefs do not engage with each other and are therefore unhelpful in clarifying many of the factual and legal issues presented by this appeal.   Nonetheless, this appeal has a straightforward resolution.  We conclude that LMI is not entitled to certiorari relief because LMI did not timely appeal to the Board its appellate issues relating to the 2018 CUP.  *See Sauk County v. Trager*, 118 Wis. 2d 204, 210, 346 N.W.2d 756 (1984) ("The general rule … is that a party must complete all administrative agency proceedings before coming into court.").

¶3      Because LMI failed to preserve its appellate issues about the 2018 CUP by raising them in a timely appeal to the Board of Appeals, we affirm the circuit court's decision dismissing this certiorari action, albeit on different grounds from those relied on by the circuit court.  We remand the action to the circuit court with instructions to vacate the restraining order enjoining the City from taking enforcement action against LMI.

## BACKGROUND

¶4     LMI owns property on Walrath Street in the City of Sparta (the Walrath property).  LMI operates two businesses on the Walrath property: a towing company called Rush Hour Towing and an airline equipment refurbishing company called Flight Service.[1]  As part of these operations, the Walrath property is used to store unlicensed and abandoned vehicles and salvaged airline equipment.  In addition, an airplane is stored on the Walrath property for the purpose of testing salvaged airplane parts.

¶5     On September 16, 2015, the City of Sparta zoning administrator, Todd Fahning, sent a letter notifying LMI that it needed a CUP for the outside storage of motor vehicles, an airplane, and other items stored in front of the Walrath property.  The letter stated that "[i]f you wish to continue the outside storage of items, you must submit the enclosed Planning Commission application, a plan for screening[,] as well as the appropriate fee no later than October 5, 2015."

¶6     On July 17, 2017, Fahning sent LMI a second letter reiterating the need for a CUP for its outside storage and further stated that outside storage "requires screening as approved by our existing City ordinance."  In this letter, Fahning stated that LMI had previously indicated that it "would begin working on … such a plan" but "[n]othing to date has been submitted."  Fahning told LMI that "[i]f you wish to continue the outside storage of items, you must submit the enclosed Planning Commission application, a plan for screening[,] as well as the

---

[1] We refer collectively to these entities as LMI.

3

appropriate fees no later than August 1, 2017." Fahning further informed LMI that the "[f]ailure to comply with this order will force the City of Sparta to begin issuing municipal citations in the amount of $255.00 for each day of [a] violation after August 1, 2017."

¶7 LMI applied for a CUP for outside storage on June 1, 2018. The planning commission considered LMI's application at a public hearing on June 18, 2018. According to the minutes of the hearing, the owners of Rush Hour Towing said that "they have improved the property since they took it over" and were planning to put up a fence. A nearby property owner expressed concerns about the effect of outside storage on property values, but spoke in favor of adding a fence. The planning commission voted "to table the decision on the [CUP] … until the July meeting which would give the owners time to put together a plan and time frame on what they intend to do with their property."

¶8 The minutes of the planning commission's meeting on July 16, 2018, reflect that LMI was not present and had not presented a plan for the Walrath property. The planning commission heard from an adjoining property owner who was strongly opposed to the outside storage. The planning commission voted to deny the CUP. Fahning notified LMI by letter that its 2018 CUP had been denied, that it had ten days to appeal the decision to the common council, and that "the decision of the plan[ning] commission shall be upheld unless the common council, by a favorable vote of two-thirds of the members of the common council, reverses or modifies the action of the plan[ning] commission."

¶9 LMI appealed, and on August 15, 2018, the common council held a public hearing on LMI's appeal of the planning commission's denial of its CUP

4

application. According to the minutes of the hearing, an attorney for LMI apologized on behalf of LMI for not appearing at the planning commission's July meeting and presented a plan to move the airplane to the rear of the property behind a screen, hire a surveyor, and install a fence screen along the border of neighboring properties. Two neighbors spoke against the plan, expressing concerns about property values and environmental contamination, and that the fence would not be tall enough to screen the stored equipment from view. Members of the planning commission said that they had still not received a plan for the property. One of the members of the council, who was also a member of the planning commission, moved to "approve the CUP through October 31st with conditions that will be on a list completed by 8-31-18, and then re-apply after that expires." The council did not approve that motion.

¶10 On September 17, 2018, the planning commission held another public hearing on the 2018 CUP application.[2] According to the minutes of the hearing, the attorney for LMI said that LMI had taken the steps identified at the August 15, 2018 common council meeting, namely, "the plane has been moved to the back of the building, the area has been surveyed and they have been in contact with a fencing company to put up a chain linked fence with slats." The attorney further said that the "only items outside the fence will be vehicles coming in and

---

[2] The record does not contain a transcript of this planning commission meeting, and we see no indication in the record documents that transcripts of these meetings were typically prepared.

The reason for the planning commission's reconsideration of LMI's 2018 CUP application is not clear from the record. The Board of Appeals asserts that the common council sent the matter back to the planning commission. However, the record materials cited by the Board state only that the council "will check with the City Attorney for the next course of action."

out on a daily basis or equipment to be refurbished and sold.  Any other equipment or vehicles will be kept inside the fenced in area and out of sight."

¶11    According to the minutes of the September 17, 2018 planning commission meeting, one member said that he saw "progress in meeting our requirements and [he] would like to revisit this next year."  According to Fahning's sworn testimony at a November 16, 2022 evidentiary hearing in front of the common council, the planning commission discussed at the September 17, 2018 meeting issuing the CUP with a one-year expiration. The planning commission then voted in favor of a motion "to approve the [CUP] for outside storage … provided that a fence be put up starting at the Northwest corner of the building and going West to the swamp and that this CUP be reviewed next year." Fahning prepared the CUP, which was issued to LMI on September 20, 2018, with an expiration date of September 18, 2019, on the face of the permit.

¶12    The record does not reflect any further action regarding the 2018 CUP until July 27, 2022, when Fahning sent a letter to LMI stating that the 2018 CUP "has since expired" and that "[t]he Planning Commission approved your [CUP] for a period of one (1) year."  The minutes of the Planning Commission's September 17, 2018 meeting were included with Fahning's letter, along with the 2018 CUP.  Fahning's letter stated that LMI "must re-apply for a new [CUP] as required by the Planning Commission."  Fahning asked LMI to submit its application "no later than August 15, 2022 in order to meet statutory requirements for notification of the public hearing to be held September 7, 2022."  Fahning gave sworn testimony at an April 25, 2023 Board of Appeals hearing concerning LMI's 2018 CUP including that he sent the letter in part because he had received more complaints about the Walrath property.

6

¶13 On August 18, 2022, LMI submitted an application for a CUP for outside storage, together with the $75 fee (the 2022 CUP application). The application submitted by LMI states that the planning commission meets on "the first Wednesday of the first full week every month."

¶14 The planning commission considered LMI's 2022 CUP application at a public hearing on September 7, 2022. According to the minutes of the hearing, neighbors expressed "concern[] that the original [CUP] issued in 2018 was not followed until now." They said that "some improvements have been made to the property, but the majority of the issues still remain." In particular, "many large items are still parked out in front of the building and numerous vehicles [are] parked on the property." Neighbors also expressed concern about environmental impacts. A representative of LMI said that LMI was planning to make further improvements.

¶15 According to the minutes of the September 7, 2022 meeting, the planning commission "expressed concern that there was not a plan in place to allow for the [CUP]." The planning commission asked LMI "for a detailed punch list of items to correct and a schedule as to when they will be completed … signed and filed at City Hall." Among other things, the planning commission wanted to "see the fence screened and the [storage] containers moved from the front of the building to the back." The planning commission voted to carry over consideration of the 2022 CUP application.

¶16     LMI's 2022 CUP application was on the agenda for the planning commission's October 5, 2022 meeting.[3]   No one was present to speak for or against the application.  Fahning informed the planning commission that "no one from LMI has contacted him regarding the [2022] CUP" application and that the next step was to issue a denial and give LMI ten days to appeal to the common council.  The planning commission voted to deny the 2022 CUP application.  On October 6, 2022, Fahning sent LMI a letter stating that, "due to [LMI's] inaction in providing the necessary information as required by the Planning Commission at the September 7, 2022[,] meeting," the planning commission "rejected your application for a [CUP] for outside storage."  The letter further stated that LMI had until October 17, 2022, to appeal the decision to the common council.

¶17     On October 14, 2022, LMI submitted a notice of appeal to the common council.  The notice stated that LMI was appealing the planning commission's "action rejecting or revoking LMI['s] [CUP] for outside storage … as outlined in the October 6, 2022[,] notice of the same from Todd Fahning."  LMI's notice further stated that "there was no basis to revoke the permit in the first instance" because "[a]ll requirements of the original permit have been met" and "LMI is in full compliance with the original permit conditions."  The notice also stated that LMI "has been denied its due process rights by the way in which the City has requested additional screening, held hearings and arbitrarily revoked the existing [CUP]."

---

[3] For ease of reference, we note that the relevant agenda item states, [or :]"Consideration of [CUP] for Outdoor Storage in the M-1 Manufacturing 1 District in accordance with Zoning Ordinance 17-232(c)5 as required by the original [CUP] issued in 2018 for LMI Properties …."

All references to Chapter 17 of the City of Sparta Code of Ordinances are to the April 8, 2026 version.

¶18      The common council heard LMI's appeal and received sworn testimony at an evidentiary hearing on November 16, 2022.[4]  One of the members of the planning commission said, and later testified at a subsequent hearing, that he told one of the owners of LMI that the consideration of the 2022 CUP application would be carried over to its October meeting and that LMI should submit its plan before that meeting.  He further said, and later testified, that LMI agreed to this timeline.  An owner of LMI testified that he did not recall being told that LMI needed to come to the October 5, 2022 planning commission meeting.[5]  Fahning testified that as well as the 2018 CUP having a one-year expiration date, it also stated that failure to comply with the conditions would render the CUP "null and void."  Fahning testified that LMI did not comply with the conditions of the 2018 CUP concerning fencing, keeping items behind the fencing, and the expansion of outside storage.  After hearing from LMI as well as several neighbors opposed to the CUP, the council voted to affirm the planning commission's denial of the 2022 CUP application.[6]

---

[4] For ease of reference, we note that the common council's agenda listed the matter as "Appealing a Decision by the Planning Commission in Accordance with Chapter 17-363 Regarding the Denial to Allow Outside Storage in the M-1 Zoning District in Accordance with Chapter 17-232(c)5 for LMI Properties located at 421 Walrath Street."

[5] The record is not clear about whether LMI received notice of the October 5, 2022 planning commission meeting.  LMI contends that, because the record does not contain any "direct evidence" that LMI received notice of the meeting, "[t]he commission apparently failed to provide notice of the adjourned meeting to LMI."  However, LMI does not explain how the notice issue is relevant to the legal issues it raises on appeal, and it is not evident to us.  Therefore, we do not further address the issue of whether LMI received notice of the October 5, 2022 meeting.

[6] According to the circuit court, LMI also filed a different certiorari action challenging the November 16, 2022 common council decision affirming the planning commission's denial of the 2022 CUP, which was dismissed.  The parties do not discuss this prior action in their briefs and, as far as we can tell, this prior certiorari action is not part of the record.  Accordingly, we do not address it further.

¶19     On December 15, 2022, LMI filed a notice of appeal to the Board of Appeals.  In the notice, LMI stated that it was appealing Fahning's July 27, 2022 letter notification that LMI's 2018 CUP had expired as well as the planning commission's October 6, 2022 action rejecting the 2022 CUP and "implicitly revoking the existing LMI [2018 CUP]."  Among other things, LMI argued that Fahning's July 27, 2022 letter regarding the 2018 CUP's expiration was "contrary to the terms of the original Planning Commission motion for approval"; and that "[t]he City had no power to take the position [that] the original permit expired."  Based on LMI's contention that the 2018 CUP had not expired, LMI argued that the planning commission's denial of its 2022 CUP application "in effect was an implied revocation of the [2018 CUP]."

¶20     At the April 25, 2023 evidentiary hearing before the Board of Appeals, LMI's position was that the 2018 CUP was still valid.  The Board of Appeals voted to "uphold the previous decision made by the Planning Commission."

¶21     On May 24, 2023, LMI filed the underlying certiorari action in the circuit court, arguing that the Board of Appeals did not act according to law, that its decision reflected its will and not its judgment, and that there was no reasonable evidentiary basis for its decision.  LMI also moved for a restraining order enjoining the City from taking enforcement action pending appeal, which the circuit court granted.

¶22     On August 12, 2024, after briefing by the parties, the circuit court entered a judgment dismissing LMI's certiorari action and vacating the restraining order.  LMI then filed a motion for relief pending appeal, asking the circuit court to restore the restraining order to prevent the City from taking enforcement action

against LMI pending the outcome of this appeal. Following a hearing on December 9, 2024, the court granted LMI's motion and entered another restraining order pending this appeal. LMI appeals.

## STANDARD OF REVIEW

¶23 In a certiorari action challenging a decision of a local government body, we review the decision of the local government body, not the decision of the circuit court. *See Miller v. Zoning Bd. of Appeals of Village of Lyndon Station*, 2022 WI App 51, ¶18, 404 Wis. 2d 539, 980 N.W.2d 295. Certiorari review is limited to four questions:

> (1) whether the municipality kept within its jurisdiction;
> (2) whether it proceeded on a correct theory of law;
> (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Ottman v. Town of Primrose*, 2011 WI 18, ¶¶35-36, 332 Wis. 2d 3, 796 N.W.2d 411. We apply a presumption of correctness and validity to a municipality's decision. *Id.*, ¶48. LMI "bears the burden to overcome the presumption of correctness." *Id.*, ¶50.

## DISCUSSION

¶24 LMI argues on appeal that: (1) the Board of Appeals failed to act according to law when it did not state grounds for its decision; and (2) the Board's decision to deny LMI's appeal was "arbitrary, oppressive or unreasonable and represented its will and not its judgment." However, as we explain below, LMI has failed to preserve its appellate issues because it did not timely appeal those

11

issues to the Board. *See **Trager***, 118 Wis. 2d 204, 210. Accordingly, LMI is not entitled to certiorari relief.

¶25 As an initial matter, we identify two propositions by LMI that simplify our resolution of this appeal. First, we accept LMI's representation that its certiorari action "is appealing the [Board of Appeal's] determination of the status of the [2018] CUP" and not the denial of LMI's 2022 CUP application. As a result, except for proceedings applicable to our analysis on this point that may have been related to the 2022 CUP application, we do not consider further the denial of the 2022 CUP application.[7] Second, we accept LMI's statement that it is not disputing that the common council has exclusive authority to review actions by the planning commission, while the Board of Appeals has exclusive jurisdiction over acts of city officials.[8] Here, LMI makes clear that it is challenging, in pertinent part, the Board's review of Fahning's insertion of the one-year expiration

---

[7] The parties devote much of the appellate briefing to arguments about the subjects of the certiorari action. Because LMI is the appellant, we adopt its position about what it is appealing here.

[8] According to the Board of Appeals, WIS. STAT. § 62.23(7)(e)1. (2023-24) authorizes the common council to give itself exclusive authority to hear appeals from the planning commission regarding conditional uses, and the council gave itself this authority in City of Sparta Code of Ordinances § 17-363. *See also* CITY OF SPARTA CODE OF ORDINANCES § 17-363 ("An appeal from the decision of the city plan commission regarding an application for a [CUP] may be taken to the common council by any person aggrieved by the decision of the plan commission and must be filed in the office of the city clerk within ten days of the decision of the plan commission."). LMI does not on appeal dispute that the council has this exclusive authority. Likewise, LMI does not on appeal dispute that § 17-69(1) authorizes the Board of Appeals "[t]o hear and decide appeals where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative official in the enforcement of [Chapter 17] or of any ordinance adopted pursuant thereto," and that such appeals must be brought within thirty days. *See* CITY OF SPARTA CODE OF ORDINANCES § 17-76 ("Such appeal shall be taken within 30 days by filing with the officer from whom the appeal is taken and with the board, a notice of appeal specifying the grounds thereof.").

All references to the Wisconsin statutes are to the 2023-24 version.

term in the 2018 CUP, and we conclude that our determination of this issue is dispositive of LMI's appeal.[9]

¶26 LMI contends that its appeal to the Board of Appeals sought review not of the common council's adoption of the planning commission's denial of LMI's 2022 CUP application (which as noted above the Board lacked authority to review), but of "Fahning's contention that the first [CUP] had both expired and was terminated." For the reasons that follow, we conclude that Fahning implemented the planning commission's decision to issue the 2018 CUP with a one-year expiration date as reflected on the face of the 2018 CUP. Because the planning commission's decision to issue the 2018 CUP for a one-year period was not appealed to the common council—which LMI agrees has exclusive jurisdiction to hear appeals from decisions of the planning commission—within the ten-day appeal window, the one-year duration of the 2018 CUP stands. *See* CITY OF SPARTA CODE OF ORDINANCES § 17-363 ("An appeal from the decision of the city plan commission regarding an application for a [CUP] may be taken to the common council by any person aggrieved by the decision of the plan commission and must be filed in the office of the city clerk within ten days of the decision of the plan commission."). Thus, LMI failed to preserve its challenge on certiorari to the one-year expiration date in the 2018 CUP. *See **Trager***, 118 Wis. 2d 204, 210.

---

[9] LMI also challenges sworn testimony by Fahning at the November 16, 2022 evidentiary hearing before the common council that LMI's 2018 CUP terminated because of LMI's noncompliance with its terms. Because our conclusion that LMI failed to timely appeal the issue of the expiration of the 2018 CUP to the Board of Appeals is dispositive, we do not address LMI's alternative argument. *See **Lamar Cent. Outdoor, LLC v. DHA***, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶27    LMI's certiorari action would still fail even if we were to accept its position that, rather than implementing the decision of the planning commission, Fahning improperly inserted the one-year expiration date in the 2018 CUP, and that his July 27, 2022 letter stating that the 2018 CUP had expired triggered an appeal to the Board of Appeals. This is because LMI did not file a timely appeal with the Board, given that the relevant city ordinance required LMI to appeal within thirty days. *See* CITY OF SPARTA CODE OF ORDINANCES § 17-76.[10] Because LMI did not timely appeal to the Board the issues that LMI is pursuing in this certiorari action, LMI is not entitled to certiorari relief. *See **Trager***, 118 Wis. 2d 204, 210.

¶28    Our analysis proceeds in two parts. In Section I, we address and reject LMI's arguments that the 2018 CUP approved by the planning commission was indefinite. In Section II, we address and reject LMI's arguments that its appeal to the Board regarding the status of the 2018 CUP was timely.

I.    The duration of the 2018 CUP

¶29    The central question in this case, according to LMI, is "the status of the first [CUP]." LMI argues that the planning commission voted in 2018 to

_____

[10] The City of Sparta Code of Ordinances § 17-76 states:

> Appeals to the board of appeals may be taken by any person aggrieved or by any officer, department, board, or bureau of the city affected by any decision of the zoning administrator. Such appeal shall be taken within 30 days by filing with the officer from whom the appeal is taken and with the board, a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken.

approve an indefinite CUP, and that Fahning acted contrary to the planning commission by issuing a CUP that contained a one-year expiration. LMI's arguments fail to persuade.

¶30     LMI asserts that "the evidence is undisputed as to what terms the Planning Commission set for the 2018 CUP." LMI points to the minutes of the September 17, 2018 planning commission meeting, which provide, in relevant part:

> A motion was made by John Ambro and seconded by Jim Church to approve the [CUP] for outside storage in M-1 Zoning District for Rush Hour Towing/Flight Service in accordance with Chapter 17-232(c)(5) for property located at 42l Walrath Street provided that a fence be put up starting at the Northwest corner of the building and going West to the swamp and that this CUP be reviewed next year. Motion carried 6-0.

¶31     LMI further asserts that Fahning acted contrary to the language in this motion when he issued the 2018 CUP with a one-year expiration. To support this assertion, LMI relies on the following exchange between LMI's attorney and Fahning at the November 16, 2022 common council evidentiary hearing that resulted from LMI's appeal of the planning commission's October 5, 2022 decision denying LMI's 2022 CUP application:

> [LMI Attorney:] So, um, you would agree that the Planning Commission minutes of September 17, 2018[,] that appear in this packet were the ones that were approved by the Planning Commission probably in October of 2018 as the official minutes of the Planning Commission from September 17, 2018?
>
> [Fahning:] So the minutes I'm looking at, you're saying were approved in October? Yeah, that would have been, yes.
>
> [LMI Attorney:] Okay. And the motion that was approved reads as follows, "Motion was made by John Ambro and seconded by Jim Church to approve the [CUP] for outside

15

storage in M-1 Zoning District for Rush Hour Towing/Flight Service in accordance with Chapter 17-232(C)(5) for the property located at 421 Walrath provided that a fence be put up starting at the northwest corner of the building and going west to the swamp and that this [inaudible] be reviewed next year." That was the motion that carried 6 to nothing correct?

[Fahning:] It appears that way yes.

[LMI Attorney:] Is there anything, is there any specific provision in that motion that says this [CUP] is only good for a year, i.e. that it terminates in one year?

[Fahning:] Um, that was the, ah, wishes of the Planning Commission.

[LMI Attorney:] Was that in the motion?

[Fahning:] Um, I don't know, apparently not.

¶32 Contrary to LMI's assertion, this testimony establishes that Fahning interpreted the planning commission's discussion of the terms of the 2018 CUP and the language in the motion as expressing the planning commission's intent to issue a CUP with a one-year expiration. As quoted above, Fahning first testified that through its discussion and motion, the planning commission intended to issue the CUP with a one-year expiration. We do not take Fahning's equivocal response, "I don't know, apparently not" as a concession that it was not reasonable to interpret the phrase in the motion, "provided … that this permit be reviewed next year," as stating that the 2018 CUP should be issued for one year only. That is, we do not take Fahning's equivocal response as contradicting his initial testimony that the motion reflected the planning commission's intent to issue the CUP with a one-year expiration.

¶33 In a certiorari action, a municipality's decision is entitled to a presumption of correctness and validity. *See **Ottman***, 332 Wis. 2d 3, ¶48. Here, Fahning, acting on behalf of the city and implementing what he believed to be the

16

planning commission's decision, issued the 2018 CUP with a one-year expiration date on the face of the permit. LMI "bears the burden to overcome the presumption of correctness." *Id.*, ¶50. We conclude that LMI has not overcome the presumption of correctness for two reasons.

¶34 First, to the extent that the motion's requirement that "this permit be reviewed in one year" does not expressly state the intent to issue the CUP with a one-year expiration (which we do not accept), LMI does not cite any legal support for its position that all restrictions that apply to a CUP must be articulated with that level of explicitness in the planning commission's motion to approve the CUP. LMI relies on our decision in ***Bettendorf v. St. Croix County Board of Adjustment***, 224 Wis. 2d 735, 591 N.W.2d 916 (Ct. App. 1999), in which we addressed a municipality's argument that "implied conditions must be read into every [CUP]." *Id.* at 741 n.3. We expressly stated that we were not deciding that issue. *Id.* Instead, we merely "point[ed] out that if [the municipality] deems a condition important, it *should* insert that condition into the permit it grants." *Id.* (emphasis added). Our footnote in ***Bettendorf*** therefore does not support LMI's argument that the planning commission's motion was required to more explicitly state the one-year expiration that it discussed should be included in the 2018 CUP.

¶35 Second, the record supports Fahning's interpretation of the phrase "provided … that this permit be reviewed next year" to mean that the planning commission approved the 2018 CUP for one year. Specifically, Fahning testified at the April 25, 2023 evidentiary hearing in front of the Board of Appeals that "it was crystal clear in the committee and the Planning Commission that it was a year. I think everyone agreed to it including LMI." We see no testimony from LMI to rebut Fahning's sworn testimony that the planning commission's motion and vote occurred immediately after it had discussed issuing a CUP that would expire after

one year, nor do we see any indication that LMI disagreed with a one-year duration of the 2018 CUP during the planning commission's hearing.[11]

¶36　As far as we can tell, the record evidence is consistent with Fahning's testimony that the planning commission approved the 2018 CUP for one year. For example, the minutes from the preceding common council meeting on August 15, 2018, show that one of the members of the planning commission had already proposed issuing a CUP with an expiration date. In addition, LMI's conduct in applying for a 2022 CUP after receiving Fahning's July 27, 2022 letter is consistent with Fahning's assertion that LMI agreed that the 2018 CUP would expire after one year.[12] Finally, the minutes of the planning commission's meeting on September 7, 2022, regarding LMI's 2022 CUP application contain no indication that LMI argued to the planning commission that the 2018 CUP was still in effect. For these reasons, we apply the presumption of correctness to Fahning's interpretation that on September 17, 2018, the planning commission voted to approve the 2018 CUP for one year.

---

[11] Fahning testified at the April 25, 2023 evidentiary hearing in front of the Board of Appeals that LMI agreed to the one-year expiration during the planning commission's hearing on September 17, 2018. As far as we can tell from the record, LMI has not presented any argument or evidence to dispute Fahning's testimony on this point. If LMI agreed to the one-year expiration, LMI would have no basis to appeal that expiration to the common council or to the Board of Appeals.

[12] LMI contends that it pursued the path of applying for a new CUP in August 2022 because it wanted to cooperate with the City, but this argument is at odds with LMI's prior conduct in ignoring letters from the City in 2015 and 2017. This argument is also at odds with LMI's subsequent conduct in not submitting a plan as agreed or attending the October 5, 2022 planning commission meeting.

In fact, one of LMI's owners testified that he did not come to the October 5, 2022 planning commission meeting because he did not "have time to, to play these games. You guys approve it or disapprove it or do something, I, I don't have time to come in here once a month." Therefore, the record does not support LMI's characterization of its conduct as cooperative.

¶37     LMI argues that the planning commission did not have the authority to impose a one-year expiration for the 2018 CUP because there is no local ordinance that authorizes the planning commission to impose a limit on the duration of a CUP.  This argument is a non-starter because state statute authorizes a city to impose a duration on a CUP.  *See* WIS. STAT. § 62.23(7)(de)2.b.  LMI argues that this statute requires that any duration be "measurable," but we see no basis for concluding that the expiration date of September 18, 2019, stated in the 2018 CUP, is not a measurable duration.

¶38     LMI further argues that the only reasonable reading of the language in the planning commission's motion is that the one-year review was an alternative to requiring surety or cash escrow pursuant to City of Sparta Code of Ordinances § 17-361(4).[13]  LMI does not identify any record support for the assertion that the planning commission was considering requiring a cash payment from LMI to ensure its compliance, nor does our non-exhaustive review of the record indicate that the one-year review period was proposed as an alternative to a cash payment.  Finally, even if LMI were correct, requiring a one-year review as an alternative to cash payment is nonetheless consistent with a decision to issue the 2018 CUP for one year.

---

[13]  This ordinance provides, in relevant part,

> In recommending any conditional use, the commission may prescribe appropriate conditions and safeguards in conformity with this article.  The commission may request that the city be provided with either a surety bond, cash escrow, certificate of deposit, securities, or cash deposit prior to issuance of the [CUP].  The security shall be used to guarantee compliance with the conditions of the permit and shall be returned to the developer when an occupancy permit is issued.

CITY OF SPARTA CODE OF ORDINANCES § 17-361(4).

¶39 Because LMI has not supported its argument with relevant legal authority or pointed to record facts that indicate that the motion approved by the planning commission did not impose a one-year duration on the 2018 CUP, LMI has not overcome the presumption that the City, through its zoning administrator, Fahning, correctly implemented the planning commission's decision by issuing the 2018 CUP for one year.

¶40 Our conclusion is further reinforced by the planning commission's actions in conducting a public hearing on LMI's 2022 CUP application and then denying that application. It makes no sense for the planning commission to conduct a public hearing on LMI's 2022 CUP application if the commission had already approved an indefinite CUP in 2018. For these reasons, we reject LMI's arguments that the planning commission approved an indefinite CUP at its meeting on September 17, 2018, and we conclude that Fahning properly issued the 2018 CUP for one year.

## II. Timely Appeal

¶41 LMI argues that it properly presented to the Board of Appeals its appeal of Fahning's assertion in his July 27, 2022 letter that the 2018 CUP had expired and his later testimony at the November 16, 2022 evidentiary hearing before the common council that the 2018 CUP was terminated based on violations of its conditions. We reject the premise of this argument because we have already concluded that Fahning implemented the planning commission's decision when he issued the 2018 CUP for one year. LMI failed to exhaust its administrative remedies at that point because it did not appeal the planning commission's decision to issue the 2018 CUP for one year to the common council, which LMI agrees has exclusive jurisdiction to review planning commission decisions.

However, even if we accept LMI's position that Fahning acted individually in issuing the 2018 CUP with a one-year expiration date on the face of the 2018 CUP, LMI did not timely seek review of Fahning's action by appealing to the Board of Appeals within thirty days of the issuance of 2018 CUP. LMI does not explain why it did not pursue an appeal of the one-year expiration date in the 2018 CUP at the time it was issued, and it failed to exhaust its administrative remedies at that time.

¶42   We could end our analysis here, but for the sake of completeness we address LMI's argument on appeal that it was entitled to appeal Fahning's assertion in his July 27, 2022 letter that the 2018 CUP had expired. Even if we accept LMI's position that this letter triggered a new round of appeals regarding the expiration of the 2018 CUP, LMI failed to timely appeal Fahning's assertions that the 2018 CUP had expired to the common council or to the Board of Appeals. *See* CITY OF SPARTA CODE OF ORDINANCES § 17-76 (requiring a person aggrieved by any decision of a city zoning administrator to appeal to the Board of Appeals within 30 days); *see also* CITY OF SPARTA CODE OF ORDINANCES § 17-363 ("An appeal from the decision of the city plan commission regarding an application for a [CUP] may be taken to the common council by any person aggrieved by the decision of the plan commission and must be filed in the office of the city clerk within ten days of the decision of the plan commission.").

¶43   LMI argues that it delayed filing an appeal with the Board of Appeals concerning Fahning's assertion in his July 27, 2022 letter that the 2018 CUP had expired because LMI needed to exhaust its administrative remedies by "following the city's direction as to how to remedy the situation," which was to apply for a new CUP. *See **Trager***, 118 Wis. 2d 204, 210. We reject the argument that LMI first had to exhaust pursuing a 2022 CUP before appealing what it

deemed to be the wrongful expiration of the 2018 CUP, as unsupported by relevant legal authority.[14]

¶44      Moreover, LMI's invocation of the exhaustion doctrine is at odds with the purpose of the doctrine, given the facts of this case. LMI acknowledges that "the exhaustion rule is a rule of policy, convenience, and discretion, not a rule regulating … jurisdiction." ***Trager***, 118 Wis. 2d at 211-12. The purpose of the exhaustion doctrine is "to allow the [municipality] to apply its special competence and expertise and to make a factual record." ***Id.*** at 210-11. In addition, requiring exhaustion helps "to achieve economy of judicial time." ***Id.*** at 211.

¶45      Here, LMI's choice to proceed with separate and sequential appeals to the common council and to the Board of Appeals did not serve these goals of the exhaustion doctrine, given that the 2018 CUP was granted for one year and LMI did not timely appeal the one-year expiration. Instead, on October 14, 2022, LMI asked the common council to review the planning commission's denial of its 2022 CUP application as if the commission had rejected or revoked the 2018 CUP,[15] rather than appealing Fahning's statement in his July 27, 2022 letter that the 2018 CUP had expired. Even if we construe Fahning's letter as improperly

---

[14] We note that LMI characterizes its appeal of the October 5, 2022 denial by the planning commission of its 2022 CUP application to the common council as an implied rejection or revocation of the 2018 CUP. However, LMI never appealed the *expiration* of the 2018 CUP to the common council. *See* CITY OF SPARTA CODE OF ORDINANCES § 17-363 (An appeal to the common council "must specify the grounds therefor."). Accordingly, LMI's exhaustion argument additionally fails on this ground.

[15] The Board of Appeals notes that LMI's use of the term "revoke" is incorrect in this context. Instead, when the conditions of a CUP are not met, the CUP is null and void. *See* WIS. STAT. § 62.23(7)(de)4. ("Once granted, a [CUP] shall remain in effect as long as the conditions upon which the permit was issued are followed.") Accordingly, LMI's argument that the common council "revoked" the 2018 CUP appears to lack any legal basis.

asserting that the 2018 CUP had expired, as opposed to accurately reflecting the planning commission's 2018 decision, LMI's December 15, 2022 appeal of that determination was well outside the 30-day time period for such an appeal. *See* CITY OF SPARTA CODE OF ORDINANCES § 17-76. Accordingly, we decline to apply the doctrine of exhaustion to excuse LMI's delay in pursuing a timely appeal regarding the one-year expiration as indicated on the face of the 2018 CUP or when LMI received Fahning's July 27, 2022 letter notifying LMI that the 2018 CUP had expired. Rather, as explained above, the exhaustion doctrine applies to foreclose LMI's petition for certiorari review. *See Trager*, 118 Wis. 2d 204, 210.

¶46 LMI argues that it was not aggrieved until the common council affirmed the planning commission's denial of its 2022 CUP application on November 16, 2022. LMI does not develop this argument with citation to supportive legal authority, and we do not address it. *See State v. Pettit*, 171 Wis. 2d 627, 646-67, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider arguments that are undeveloped).

¶47 For these reasons, we conclude that, regardless of whether LMI was aggrieved upon receiving the 2018 CUP with a one-year expiration or upon receiving Fahning's July 27, 2022 letter stating that the 2018 CUP had expired, LMI did not timely appeal either occurrence. Because this conclusion is dispositive, we need not address LMI's alternative argument that LMI filed a timely appeal with the Board of Appeals to review "Fahning's contention that the first [CUP] had … terminated" due to LMI's failure to comply with the conditions.[16] *See Lamar Cent. Outdoor, LLC v. DHA*, 2019 WI 109, ¶41, 389

---

[16] We also note that LMI does not develop any argument about why a timely appeal of this additional ground for concluding that LMI no longer held a valid CUP would extend its time

(continued)

Wis. 2d 486, 936 N.W.2d 573 ("An appellate court need not address every issue raised by the parties when one issue is dispositive." (citation omitted)). We also need not address LMI's argument that the Board's failure to state reasons for its decision is a basis for granting LMI certiorari relief. Because LMI's appeal to the Board was not timely, LMI is not entitled to certiorari relief. *See **Trager***, 118 Wis. 2d 204, 210.

## CONCLUSION

¶48    For the foregoing reasons, we conclude that LMI is not entitled to certiorari relief. We therefore affirm the circuit court's dismissal of this certiorari action.

¶49    We remand to the circuit court with instructions to vacate the restraining order preventing the City from taking enforcement action against LMI.

*By the Court.*—Judgment affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

to appeal the expiration of the 2018 CUP, and we address this issue no further. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider arguments that are undeveloped).